IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| RAMON JOSE VASQUEZ, | CASE NO. 5:10-cv-00948 EJD |
| Plaintiff(s), | **ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| BRIAN FERRANTE, et. al., | [Docket Item No(s). 34] |
| Defendant(s). | |

Plaintiff Ramon Jose Vasquez ("Plaintiff") brings the instant action against San Jose Police Officers Brian Ferrante ("Sgt. Ferrante") and Tom Morales ("Sgt. Morales")[1] for violations of 42 U.S.C. §§ 1981, 1983, false imprisonment, negligent infliction of emotional distress and intentional infliction of emotional distress.  See Compl., Docket Item No. 1.  Presently before the court is Defendants' Motion for Summary Judgment.  See Docket Item No. 34.

Federal jurisdiction arises pursuant to 28 U.S.C. § 1331.  The court has carefully reviewed the moving, opposing and reply papers for this matter.  For the reasons explained below, Defendants' motion will be granted.

### I.   FACTUAL BACKGROUND

**A.   The Death of Rojelio Silva**

On February 3, 2008, at approximately 2:10 a.m., Sgt. Morales received a call from the

---

[1] The court refers to Sgt. Ferrante and Sgt. Morales collectively as "Defendants."

1
CASE NO. 5:10-cv-00948 EJD
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

supervising Homicide Lieutenant that a homicide had occurred at the corner of Tully Road and Capitol Expressway in San Jose. See Decl. of Tom Morales ("Morales Decl."), Docket Item No. 36, at ¶ 2. Sgt. Morales reported to the scene, which turned out to be the parking lot of an In-N-Out Burger restaurant, at approximately 3:20 a.m. Id. Sgt. Ferrante was also present at the scene. Id. at ¶ 4.

Sgt. Morales and Sgt. Ferrante learned through witness interviews and discussions with other on-scene officers that on the evening of February 2, 2008, a group of more than forty teenagers had gathered in the In-N-Out Burger parking lot to watch, or possibly join, a fight between two students from Mount Pleasant High School - Eddie Trinidad and Danny Banuelos. Id. at ¶ 5. As the students began to congregate, they attracted the attention of another small group of older males possibly affiliated with a Norteno gang based on their appearance and clothing. Id. This second group approached and taunted Trinidad and Banuelos to fight. Id. When Trinidad and Banuelos refused, one of the older males pushed on the teenagers. Id. During the commotion, one of the older males discharged a firearm several times. Id. One of the shots struck Rojelio Silva in the chest, and Silva died as a result. Id. at ¶¶ 2, 5.

The police interviewed a number of witnesses at the scene of the homicide and documented these interviews with reports. See id. at Ex. B. Most of these witnesses provided a consistent description of a Hispanic adult male with a thick build between 23 and 24 years of age as present during the altercation and associated with the group of older males. Id. According to the witnesses, this individual had a mustache and goatee as well as a tattoo with writing on his neck. Id. Some of the witnesses believed this individual to be the actual suspect. Id.

The witnesses also described the vehicles present at the scene. Some stated that the suspect fled in a bronze colored pick-up truck. Id. Others described a white Dodge Charger with tinted windows and chrome rims. Id.

For physical evidence, the police recovered a cell phone at the scene from Trinidad, who indicated that phone had been dropped during the altercation. Id. Trinidad called a number in the message history of the phone and asked the individual who answered who the phone belonged to. Id. This individual said it belonged to "David." Id. Police later learned that the phone belonged to

1 David Rodriguez, a known gang member. Id.

### B. The Stop of Plaintiff's Vehicle

On February 20, 2008, Sgt. Ferrante stopped white Dodge Charger with tinted windows and 20 to 22 inch rims. See Decl. of Paul D. Ahn ("Ahn Decl."), Docket Item No. 35, at Ex. F. The vehicle was being driven by Ismael Toribio ("Toribio"), Plaintiff's brother. Id. Although Toribio did not match the description of the suspect, Sgt. Ferrante thought it significant to the investigation that Toribio had tattoos he believed associated with Norteno gangs: northern stars on his shoulder, a large tattoo of California, and the word "family" written in a stylized manner. Id. Through this stop, Sgt. Ferrante also learned that Plaintiff was a registered owner of the vehicle. Id.

Sgt. Ferrante conducted a background check on Plaintiff and learned that Plaintiff matched the description of the suspect. Id. This background check also revealed that Plaintiff was involved in an assault and vandalism incident in 2007 during which statements suggesting gang-affiliation were made. See Morales Decl., at Ex. C.

### C. The Identification, Arrest and Release of Plaintiff

Having determined that Plaintiff was a possible suspect, Sgt. Morales presented Trinidad with a photo lineup consisting of seventeen photographs, including one of Plaintiff and numerous other subjects associated with David Rodriguez who also matched the description of the suspect. Id. at ¶ 9. Trinidad identified Plaintiff as the shooter. Id. Jaime Sanchez, another witness, identified Plaintiff as the shooter through a different line-up of six photographs. Id. at 11.

The police ultimately obtained an arrest warrant and took Plaintiff into custody on March 20, 2008. Id. at ¶ 14. He was arraigned on March 21, 2008. See Ahn Decl., at Ex. D. However, the deputy district attorney assigned to the case ultimately recommended that the charges against Plaintiff be dismissed based on post-arrest investigation. Id. at Ex. A. On February 23, 2010, Plaintiff was declared factually innocent by the superior court. Plaintiff then initiated this case on March 5, 2010.

## II. LEGAL STANDARD

### A. Summary Judgment

A motion for summary judgment should be granted if "there is no genuine dispute as to any

3
CASE NO. 5:10-cv-00948 EJD
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000). The moving party bears the initial burden of informing the court of the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets this initial burden, the burden then shifts to the non-moving party to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); Celotex, 477 U.S. at 324. The court must regard as true the opposing party's evidence, if supported by affidavits or other evidentiary material. Celotex, 477 U.S. at 324. However, the mere suggestion that facts are in controversy, as well as conclusory or speculative testimony in affidavits and moving papers, is not sufficient to defeat summary judgment. See Thornhill Publ'g Co. v. GTE Corp., 594 F.2d 730, 738 (9th Cir. 1979). Instead, the non-moving party must come forward with admissible evidence to satisfy the burden. Fed. R. Civ. P. 56(c); see also Hal Roach Studios, Inc. v. Feiner & Co., Inc., 896 F.2d 1542, 1550 (9th Cir. 1990).

A genuine issue for trial exists if the non-moving party presents evidence from which a reasonable jury, viewing the evidence in the light most favorable to that party, could resolve the material issue in his or her favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986); Barlow v. Ground, 943 F.2d 1132, 1134-36 (9th Cir. 1991). Conversely, summary judgment must be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

### B. Qualified Immunity

A determination of qualified immunity requires a two-step analysis. First, the court examines whether, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Saucier v. Katz, 533 U.S. 194, 201 (2001), overruled in part by Pearson v. Callahan, 555 U.S. 223, 235-236 (2009). Second, the court looks to "whether the right was clearly established." Id. A right is clearly established if "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."

Id. at 202.

The court may decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson, 555 U.S. at 236; see also Mueller v. Auker, 576 F.3d 979, 993-94 (9th Cir. 2009). If the answer to the first of the two inquiries in the negative, then the officer's conduct was constitutional, and there can be no violation of § 1983. Lacey v. Maricopa Cnty., Nos. 09-15703, 09-15806, 2012 U.S. App. LEXIS 18320, at *27, 2012 WL 3711591 (9th Cir. Aug. 29, 2012). In that scenario, the officer has no need for immunity because he is innocent of the alleged infractions. Id.

Alternatively, if the answer to the first question is "yes" and the second question "no," then the officer's conduct is protected by qualified immunity. Id. It is only when an officer's conduct violates a clearly established constitutional right - when the officer should have known he was violating the Constitution - is qualified immunity forfeited. Id.

### III. DISCUSSION

Within the first and second causes of action under 42 U.S.C. §§ 1981 and 1983, Plaintiff alleges Defendants violated his Fourth Amendment right to be free from unreasonable seizure and his Fourteenth Amendment right to not be deprived of liberty without due process of law. In response, Defendants argue for summary judgment in their favor because there was probable cause to arrest Plaintiff for the murder, and alternatively, because Defendants are entitled to qualified immunity based on a reasonable belief that probable cause existed.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures." U.S. Const. art. IV. "Not all intrusions violate the Fourth Amendment - only 'unreasonable' ones do." Patel v. City of Los Angeles, 686 F.3d 1085, 1087 (9th Cir. 2012).[2]

---

[2] While Plaintiff has invoked the Fourteenth Amendment, the claim for false arrest actually arises solely under the Fourth Amendment. "Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing such a claim." Albright v. Oliver, 510 U.S. 266, 273 (1994) (internal quotations and citations omitted). As such, the court analyzes Plaintiff's claim only under the Fourth Amendment.

5
CASE NO. 5:10-cv-00948 EJD
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

It is settled that "[a] claim for unlawful arrest is cognizable under § 1983 [and § 1981] as a violation of the Fourth Amendment, provided the arrest was without probable cause or other justification." Dubner v. City & Cnty. of San Francisco, 266 F.3d 959, 964 (9th Cir. 2001).  Under Ninth Circuit law, "probable cause exists when, under the totality of the circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that [the suspect] had committed a crime." Peng v. Penghu, 335 F.3d 970, 976 (9th Cir. 2003); Gasho v. United States, 39 F.3d 1420, 1428 (9th Cir. 1994).  "Probable cause does not require certainty." Fuller v. M.G. Jewelry, 950 F.2d 1437, 1455 (9th Cir. 1991).  If a defendant can provide "some evidence" of probable cause, it is then plaintiff's burden to prove a lack of probable cause. Dubner, 266 F.3d at 965.  Summary judgment is therefore "appropriate only if no reasonable jury could find that the officers did or did not have probable cause to arrest." McKenzie v. Lamb, 738 F.2d 1005, 1008 (9th Cir. 1984).  "[W]here probable cause does exist civil rights are not violated by an arrest even though innocence may subsequently be established." Beauregard v. Wingard, 362 F.2d 901, 903 (9th Cir. 1966).

Looking at the totality of the circumstances here, the court must conclude that the information known to Defendants at the time of Plaintiff's arrest establishes probable cause.  First, Defendant's personal vehicle, a white Dodge Charger with tinted windows and 22-inch rims, matched the description of one identified by three witnesses as present at the scene of the murder. See Morales Decl., at Ex B.  Each of these witnesses stated that some portion of the alleged gang members associated with the suspect fled the scene in a similar vehicle. See id.

Second, Toribio's appearance at the time of the vehicle stop suggested to Sgt. Ferrante that he was affiliated with a Norteno street gang.  Gang affiliation, and in particular affiliation with a Norteno gang, was an obvious and important characteristic of the suspect based on the numerous witness statements describing the suspect and his companions. See id.  Moreover, the primary suspect at the time, David Rodriguez, was a known associate of the "San Jose Grande" and "Brotherhood Familia" gangs. Id. at Ex. C.  Here, it is undisputed that Toribio has tattoos of northern stars on his shoulder, a large tattoo of California, and the word "family" written in a stylized manner, and Sgt. Ferrante believed Toribio's tattoos as "familiar or not uncommon" for

1  individuals associated with a Norteno gang. See Ahn Decl., at Ex. F.[3]

2  Third, Plaintiff's physical appearance was nearly identical to that of the suspect. Numerous
3  witnesses described the suspect as a Hispanic male in his twenties between 5'7" and 5'9" with a
4  medium to thick build, mustache and goatee, closely cropped hair and a tattoo containing cursive
5  writing on his neck. See Morales Decl., at Ex. B. Similarly, Plaintiff testified that, at the time of the
6  murder, he was 5'8" tall, weighed between 195 and 203 pounds, and had a tattoo of the word
7  "Thuglord" written in cursive on his neck. See Ahn Decl., at Ex. C.[4] Thus, Plaintiff's own
8  testimony establishes factual consistency.

9  Fourth, certain information known to Defendants suggested that Plaintiff was affiliated with
10  a Norteno gang. Specifically, Defendants discovered that Plaintiff was involved in an assault and
11  vandalism incident in 2007, during which individuals associated with Plaintiff reportedly yelled out
12  "Norte" ("North") and "Capitol Park." See Morales Decl., at Ex. D. These terms are suggestive of
13  Norteno gang affiliation.

14  Fifth, two witnesses, Trinidad and Sanchez, identified Plaintiff as the suspect during a photo
15  lineup. See id. at ¶¶ 9, 11. In fact, Sanchez identified Plaintiff by stating: "This is the guy. It looks
16  just like the guy." Id. at ¶ 11.

17  Plaintiff's arguments against a finding of probable cause are not convincing. With regard to
18  the vehicle, Plaintiff points to irrelevancies. The fact that some witnesses described another suspect
19  vehicle present at the scene of the murder does not change the fact that witnesses also described a
20  vehicle matching that of Plaintiff. Similarly, the fact that Plaintiff's vehicle had black rims on the
21  tires which differed from the chrome rims described by witnesses is of no moment, especially when

---

[3] It appears that a portion of Sgt. Ferrante's deposition transcript is missing from Defendant's filing. In their opposition, Defendants reference page 52 but did not include it for the court's review. However, since Plaintiff does not dispute the appearance Toribio's tattoos, the missing page is of no moment.

[4] Again, it appears that Plaintiffs neglected to include the portion of Plaintiff's deposition which addresses his tattoos. However, since Plaintiff does not dispute that he has a tattoo on his neck containing the word "Thuglord" in cursive writing, the deposition testimony is not necessary for the court to consider this fact.

rims can be easily changed out.[5] In addition, the fact that Plaintiff's vehicle was stopped numerous times prior to February 20, 2008 - while Defendants were still investigating the case - is of little import to the question of whether Defendants acted with probable cause at the time Plaintiff was arrested.

The same can be said in response to Plaintiff's argument that neither Toribio nor Plaintiff are actually associated with a Norteno gang. Although the court finds it justifiable for Defendants to conclude that Toribio and Plaintiff were gang-affiliated based on the information available to them at the time, any mistake of fact on this issue would have nonetheless been a reasonable one. Probable cause can still exist under that circumstance. See United States v. Miguel, 368 F.3d 1150, 1153-54 (9th Cir. 2004) ("'A mere mistake of fact will not render a stop illegal, if the objective facts known to the officer gave rise to a reasonable suspicion that criminal activity was afoot.'" (quoting United States v. Mariscal, 285 F.3d 1127, 1131 (9th Cir. 2002)).

Furthermore and despite Plaintiff's protestations otherwise, the witnesses' descriptions of the suspect were almost entirely consistent and much more detailed than what could reasonably be termed as "general" in nature, and Plaintiff's description of himself matched that provided by the witnesses. Moreover, Plaintiff's contention that the photo lineups were impermissibly suggestive and unreliable is misplaced considering the evidence relevant to a "totality of the circumstances" test shows otherwise. United States v. Bagley, 772 F.2d 482, 492 (9th Cir. 1985) ("To determine whether a challenged identification procedure is so impermissibly suggestive as to give rise to a substantial likelihood of mistaken identification, we must examine the totality of the surrounding circumstances.").

On this record, the court finds that no reasonable jury could find an absence of probable cause to arrest Plaintiff, even if the facts are construed in the light most favorable to Plaintiff. Indeed, "[n]either certainty, nor proof beyond a reasonable doubt, is required for probable cause to arrest," and Defendants certainly had obtained sufficient pre-arrest information to suspect that Plaintiff has committed a crime. United States v. Harvey, 3 F.3d 1294, 1296 (9th Cir. 1993). No

---

[5] In any event, Toribio testified that the black rims had a chrome lip "three, maybe four inches wide . . . throughout the entire rim." See Reply, Docket Item No. 40, at Ex. A.

8
CASE NO. 5:10-cv-00948 EJD
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

constitutional violation therefore occurred here. Accordingly, the court need not reach the issue of qualified immunity nor address Plaintiff's arguments in opposition to that doctrine. Defendants are entitled to summary judgment on Plaintiff's first and second causes of action.

Because the two claims supporting federal question jurisdiction will be resolved against Plaintiff, the court declines to exercise supplemental jurisdiction over the remaining state law claims. They will be dismissed. See 28 U.S.C. § 1367(c)(3); Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988); Acri v. Varian Assocs., Inc., 114 F.3d 999, 1000 (9th Cir. 1997) (en banc).

### IV. ORDER

Based on the foregoing, Defendants' Motion for Summary Judgment (Docket Item No. 34) is GRANTED as to the first and second causes of action.

Since the court declines to exercise supplemental jurisdiction over the remaining state-law claims, they are DISMISSED WITHOUT PREJUDICE.

Since this order effectively resolves this case, judgment shall be entered in favor of Defendant and the clerk shall close this file.

**IT IS SO ORDERED.**

Dated: September 28, 2012



EDWARD J. DAVILA
United States District Judge

CASE NO. 5:10-cv-00948 EJD
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT